**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ANDRES FELICIANO MEJIA,

Petitioner,

v.

RUBEN LEYVA, *et al.*,

Respondents.

Case No. 2:26-cv-01282-RFB-EJY

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Andres Feliciano Mejia's Petition for Writ of Habeas Corpus, which he filed pursuant to 28 U.S.C. § 2241. See generally Pet. for Writ of Habeas Corpus, ECF No. 1-1 [hereinafter, "Petition"]. Through it, he challenges the lawfulness of his ongoing detention at the Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents are detaining Petitioner without providing an opportunity for release on bond, as they assert that he is subject to 8 U.S.C. § 1225(b)(2)(A). See Return 1–2, ECF No. 8 [hereinafter, "Opposition"]. In doing so, Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A), which mutates this provision into an instrument of mass-detention that covers every noncitizen who entered our country without inspection. See Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *9 (D. Nev. Mar. 30, 2026).

This Court is well acquainted with Respondents' reimagination of the INA, as the Court has repeatedly rejected it as unlawful. See, e.g., id. at *34–35 (collecting cases). In fact, the Court recently granted relief on this precise issue in a related class-action, which is inextricably intertwined with this case. Specifically, the Court: (i.) declared that Respondents' interpretation is wrong; (ii.) declared that members of the Jacobo Ramirez Class are entitled to procedural

protections under 8 U.S.C. § 1226(a) and its implementing regulations; and (iii.) vacated Respondents' related policies—namely, the Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). See Jacobo Ramirez, 2026 WL 879799, at *33–34. Relevant here, Mr. Mejia asserts that he is a member of this class and, therefore, he is entitled to the relief afforded to it by this Court. Put differently, Petitioner claims that his ongoing detention violates the Immigration and Nationality Act and this Court's prior summary judgment. See Petition at 2.

For the following reasons, the Court agrees. As discussed below, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. Thus, his ongoing detention without a bond hearing violates the Immigration and Nationality ("INA"), as he cannot be detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Instead, his detention is governed by § 1226(a) and its implementing regulations. Accordingly, the Court awards Petitioner a writ of habeas corpus and orders Respondents to supply him with a bond hearing. Finally, since Respondents have deprived Petitioner of significant procedural protections embedded into § 1226(a), the Court exercises its equitable discretion to shift, and heighten, the burden of proof to the Department of Homeland Security.

## I.      CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo Ramirez, 2024 WL 879799, at *4 (citation omitted). Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds that Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding

process in habeas corpus proceedings). First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. See R. of Deportability/Inadmissibility 2–3, ECF No. 8-1 [hereinafter, "I-213"]; Petition at 2. Second, he is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States District of Nevada. See Notice to Appear 5, ECF No. 8-1 [hereinafter, "NTA"]; Petition at 2. Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See NTA at 5; I-213 at 4; Petition at 2. Fourth, Respondents are detaining him pursuant to § 1225(b)(2)(A); in other words, the government is not asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opposition at 1–2; Petition at 2. Fifth, Petitioner was arrested well within our country's interior, long after he entered the United States. See I-213 at 3. In sum, Petitioner clearly falls within the Jacobo Ramirez Class, and he is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief."). Indeed, Respondents concede as much through their return. See Opposition at 1 (". . . Petitioner is a Class Member.").

Therefore, Petitioner's ongoing detention is unlawful, as the government is improperly subjecting him to mandatory detention under § 1225(b)(2)(A); in reality, Petitioner is subject to § 1226(a), which supplies significant procedural protections, including a bond hearing See Jacobo Ramirez, 2026 WL 879799, at *33–34.

## II.      REMEDY

Having found that Petitioner's ongoing detention is unlawful, the Court turns to the proper remedy. Before fashioning a remedy for this specific case, the Court outlines some general principles which govern habeas corpus proceedings. Federal courts have equitable discretion to fashion habeas relief as "law and justice require." Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243). Indeed, this Court's remedial power is "broad and flexible" when it sits in habeas. See U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (citation omitted); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice

require . . . .") (citation omitted). Since Mr. Mejia has been denied significant procedural protections which he is entitled to under § 1226(a), the Court exercises its equitable discretion to flip, and heighten, the burden of proof for purposes of his upcoming bond hearing.

Recall, Mr. Mejia is properly subject to 8 U.S.C. § 1226(a), which supplies a suite of procedural protections vis-à-vis its implementing regulations. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022). Relevant here, ICE must make several custody determinations to place, and keep, a noncitizen in detention. First, upon arresting a noncitizen, ICE must conduct an initial custody determination. See id. ("When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination.") (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen demonstrates that they are neither dangerous nor a flight risk "to the satisfaction of the officer," then the noncitizen "will be released." Id. Second, once a noncitizen is detained, they "may request a bond hearing before an [immigration judge] at any time before [their] removal order becomes final." Id. (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). Once again, if the noncitizen demonstrates that they are not "'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the [immigration judge] will order [their] release." Id. (first quoting Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006); then citing Matter of Barreiros, 10 I&N Dec. 536, 537–38 (BIA 1964)). Overall, initial custody determinations, custody re-determinations, and the full constellation of procedural safeguards embedded into § 1226(a) serve as powerful bulwarks against arbitrary, erroneous, and unconstitutional deprivations of liberty. See Rodriguez Diaz, 53 F.4th at 1209. And, to state the obvious, they are mandatory under federal law. See Backcountry Against Dumps v. Fed. Aviation Admin., 77 F.4th 1260, 1267 (9th Cir. 2023) ("A federal agency . . . is obliged to abide by the regulations it promulgates.") (citations and quotation marks omitted).

Nonetheless, it appears that Respondents have disregarded them. To elaborate, Respondents have declined to submit any evidence which demonstrates that ICE conducted an initial custody determination, even though this Court explicitly ordered them to do so. See Order Appointing Counsel 2–3, ECF No. 4. In fact, Respondents do not even attempt to argue that they complied with § 1226(a), and its implementing regulations, when they detained Petitioner. See

generally Opposition. This is unsurprising, as Respondents are actively subjecting Petitioner to mandatory detention. On this record, the Court must conclude that ICE never conducted an initial custody determination before detaining Petitioner. Critically, this key procedural safeguard cannot be replicated now that Petitioner is in detention, as it was designed to prevent unjustified detention in the first instance. To make matters worse, Petitioner has been in detention for nearly two months, and Respondents have taken no action to cure their unlawful conduct; namely, they have yet to supply Petitioner with a bond hearing *even though* they acknowledge that he is entitled to one. See Opposition at 1 (conceding that Petitioner is a member of the Jacobo Ramirez Class).

Unfortunately, Respondents' misconduct is not an isolated incident; rather, it is standard practice within this judicial district. In spite of the Court's partial summary judgment, Respondents continue to detain class members without providing the necessary procedural protections, all while "repeatedly—and increasingly—violating this Court's orders." Jimenez Gomez v. Dep't Homeland Sec., Case No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *1–2 (D. Nev. Apr. 29, 2026) (collecting examples of Respondents' violations, which include: removing petitioners from the District of Nevada; failing to release petitioners; ignoring Court-ordered deadlines; and unlawfully imposing release conditions). Beyond undermining their credibility and the rule of law, Respondents' actions raise grave procedural concerns under the INA and the Fifth Amendment's Due Process Clause. Here, by disregarding their own binding regulations, Respondents have exposed Petitioner to an intolerable risk of arbitrary, erroneous incarceration, which has now gone on for *months*.

Consequently, the Court finds that it must adopt an equitable remedy which addresses this risk. Petitioner urges the Court to award him a bond hearing, where the burden of proof is heightened and flipped. Based on the violations outlined above, the Court concludes that this is an appropriate remedy.[1] After all, it directly militates against "the risk of error inherent in the truthfinding process," Mathews v. Eldridge, 424 U.S. 319, 344 (1976), which has only been exacerbated by months of indiscriminate, unjustified detention. Put differently, a heightened,

---

[1] In reaching this conclusion, the Court does not consider whether immediate release from custody is an appropriate, if not superior, remedy in this case. Granted, the Court has awarded such relief to similarly situated non-citizens. See, e.g., Limon Ruvalcaba v. Blanche, No. 2:26-cv-01312-RFB-BNW, 2026 WL 1362542, at *3 (D. Nev. May 15, 2026). Nonetheless, Petitioner has not requested this form of relief. See generally Traverse, ECF No. 9.

flipped burden of proof will ensure that Petitioner is at liberty unless he is actually supposed to be detained, just like § 1226(a)'s procedural guardrails.

Therefore, Respondents must conduct a prompt bond hearing under § 1226(a) and its implementing regulations. In doing so, the government must prove, *by clear and convincing evidence,* that Petitioner's civil detention is justified by an individualized, constitutionally recognized interest; namely, the government must show that his detention is necessary to: (i.) prevent danger to the community or (ii.) ensure Petitioner's future appearance at removal proceedings. Cf. Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that, "[g]iven the substantial liberty interest at stake[,] . . . the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond," where a petitioner was in prolonged immigration detention while the Ninth Circuit reviewed his removal order), abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022); Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community" in the context of prolonged detention under 8 U.S.C. § 1226(c)). If Respondents fail to supply a prompt bond hearing, then they must immediately release Petitioner on his own recognizance. While the Court does not take this step lightly, it finds that this remedy is what "law and justice" demand in the context of this case. See 28 U.S.C. § 2243.

### III.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**. Respondents must supply Petitioner with a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a) by **June 10, 2026**. This bond hearing must comply with all the procedural safeguards outlined above. See supra Part II. Namely, the government bears the burden of justifying Petitioner's detention by clear and convincing evidence.

**IT IS FURTHER ORDERED** the immigration court must create a contemporaneous record of the bond hearing that is available to Petitioner upon request, see Singh, 638 F.3d at 1208,

and that is available to this Court so that it can ensure the immigration court's compliance with this Order.

**IT IS FURTHER ORDERED** that if bond is granted, Respondents must **IMMEDIATELY RELEASE** Petitioner from detention. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond through ICE payment portals, and, therefore, **IT IS FURTHER ORDERED** that Petitioner be afforded until **July 10, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as the Court has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. See generally Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **June 10, 2026**, Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on his own recognizance. This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) after a constitutionally adequate bond hearing.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **June 12, 2026**. The status report shall detail whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial. If bond was granted, or the bond hearing has not occurred, the status report shall: (i.) confirm the date and time of Petitioner's release from detention in compliance with this Order and (ii.) confirm Respondents' compliance with this Court's

directives concerning conditions of release.

**IT IS FURTHER ORDERED** that¸ if bond is granted, or the bond hearing has not occurred within the prescribed time frame, Respondents must inform Petitioner's counsel of the date, time, and location of Petitioner's release at least two hours before they effectuate it. Respondents must also return Petitioner's personal property, including any personal identification document(s), employment authorization form(s), etc., upon release.

**IT IS FURTHER ORDERED,** if bond is denied, Federal Respondents must (1) **ATTACH** the order of the immigration court to the joint status report and (2) **PROVIDE** the contemporaneous record of the bond hearing to Petitioner's counsel upon request.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** June 8, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**